# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**KELLY LYNN PEDERSON**
**KELLY HONORINE PEDERSON**,

          Debtors.

Case No.  **16-60101-13**

# MEMORANDUM OF DECISION

At Butte in said District this 10th day of January, 2017.

After due notice a hearing was held at Missoula on January 5, 2016, on Danial Renfro's ("Renfro") Motion to Modify Stay, filed on November 28, 2 2016 ("Motion") (Document No. 64).  The Debtors filed an objection and were represented at the hearing by attorney Andrew W. Pierce ("Pierce") of Morgan Pierce PLLP of Missoula.  Renfro's former spouse, Debtor Kelly Honorine Pederson ("Kelly"), testified.  Renfro appeared and testified represented by attorneys Robert Terrazas ("Terrazas") and Matt Shimanek of Terrazas Law Offices of Missoula.  Renfro's Exhibits ("Ex.") 1, 2, 3, and 4, and Debtors' Ex. 1, 2, 3[1] and 4, were admitted into evidence. Argument of counsel was heard.  At the conclusion of the parties' cases-in-chief the Court heard argument of counsel, after which the Court took Renfro's Motion under advisement.  After review of the record and applicable law, Renfro's request for retroactive relief, or annulment, of the automatic stay is denied on procedural grounds, and Renfro's Motion to Modify Stay based on 11 U.S.C. § 362(d)(1) and (2) is denied in the exercise of this Court's discretion, without

---

[1]Ex. 1, 2, and 3 offered by each party are identical to the other's corresponding number.

1

prejudice.

This Court has exclusive jurisdiction in this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a).  Renfro's Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## FACTS

Renfro and Kelly were married.  They had two children who were minors when they divorced in April of 2012.  They lived in Clinton at 20524 US Hwy 10 East, Clinton, Montana 59825 (the "marital residence").  After the divorce, Kelly married co-Debtor Kelly Lynn Pederson, with whom she filed a voluntary Chapter 13 petition commencing the instant bankruptcy case.

Renfro and Kelly underwent a mediation in their divorce, which Kelly testified lasted 8 hours.  Both parties were represented by counsel.  They reached a settlement embodied in the Marital and Property Settlement Agreement ("MPSA"/Ex. 1) dated March 21, 2013.  The MPSA awarded the marital home to Renfro, subject to the following paragraph 5c:

> Marital Residence.  Husband shall be entitled to retain the marital residence for a period of three years.  In April, 2016, Husband shall place the marital home and real property for sale.  Wife shall be entitled to receive 50% of the net sale proceeds, not to exceed $25,000.00.  Husband shall be solely responsible for maintaining the property in salable condition and shall keep the mortgage current.  When Husband sells the house in three years, a reasonable price shall be placed on the property and all reasonable steps taken to ensure a relatively prompt sale.  The parties shall mutually agree on the realtor to be used to sell the property.

Ex. 1, pp. 6-7.

Kelly testified that she agreed to give Renfro 3 years to sell the marital residence because their kids were still in school.  Moreover, she testified that Renfro asked for an additional year to make improvements to sell the home, but that he failed to list the marital residence for sale or sell

2

it after 3 years.  Kelly insists that the marriage is over, and the marital residence should be sold in accordance with Ex. 1.

Ex. 1 at paragraph 7 divided the personal debts separately incurred on or after the separation date of March 21, 2013, to Kelly and Renfro, respectively, and required that each party shall hold the other harmless from any of such separate liabilities.  Paragraph 8 apportioned the debts between the parties incurred during the course of their marriage.  Ex. 1, pp. 7-8.  Renfro assumed the mortgage on the marital residence, plus certain credit card debt and debt incurred by him unless specifically assigned to Kelly.

Paragraph 8aiii of Ex. 1 provides that Renfro assumes:  "All existing marital medical debts, collections and any outstanding judgments in an amount not to exceed $10,000."  Renfro testified that he paid $10,000 in marital debt, but that he was not required to pay Kelly's post-divorce debts.  Kelly testified that the $10,000 Renfro was assigned to pay was not related to the $25,000, which the court awarded Kelly from the sale of the marital residence, and was not related to another $9,989 for Kelly's surgery, which she paid when Renfro refused to pay.  Kelly testified that she understood the $10,000 assumed by Renfro in para. 8aiii included any judgments, and that she believes Renfro has not paid the $10,000 which he assumed.  Kelly assumed debt related to her medical care incurred on February 20, 2013, plus all credit card and other consumer debt in her name or incurred by her, unless assigned to Renfro.

The parties agreed that the MPSA cannot be modified except in writing signed by both parties.  Ex. 1, para. 17.  Paragraph 15 of Ex. 1 makes the MPSA part of the decree of dissolution of the parties' marriage, and enforceable through execution or contempt citation.

Paragraph 11 is a provision making each party responsible for his or her own attorney

fees and costs, except that if legal proceedings are instituted to enforce any provision of the MPSA, the court shall award the prevailing party a reasonable attorney's fee. Kelly testified that, among other reasons Debtors object to Renfro's Motion, is the risk that the state court would award Renfro his attorney's fee against them.

Renfro testified that he paid $10,000 pursuant to the MPSA and paid as much debt as he could, paid the mortgage on the marital residence and paid money to improve the residence so that it could be sold. Both Renfro and Kelly remain on the mortgage and title of the marital residence, and on the tax rolls and insurance. Kelly's interest in the marital residence appears to be as a tenant in common up to the amount of the $25,000 awarded to her under Ex. 1, para. 5c.

Renfro testified that Kelly incurred debts in the approximate amount of $11,000 for which judgments were entered against her and judicial liens for such judgments attached to the marital residence after March 23, 2012. Kelly testified that if Renfro timely had paid the $10,000 in marital debt he assumed under Ex. 1, the judgments and judicial liens would not have been entered against the marital residence.

Debtors filed a voluntary Chapter 13 petition on February 25, 2016. A notice of commencement of the case and deadlines, including claims bar date, were sent to creditors on February 27, 2016. The claims bar date was June 15, 2016. Renfro testified that he is not a creditor.

Among the claims filed in this case were Proof of Claim No. 10 filed by the Montana Department of Revenue ("DOR") on April 25, 2016, in the amount of $738.58 for taxes from

2012 to 2014, of which priority status was claimed for $532.28, with the remainder unsecured.[2] Proof of Claim No. 11 was filed by Collection Bureau Services, Inc. ("CBS") on April 29, 2016, asserting an unsecured nonpriority claim in the amount of $17,885.63, for which the basis of the claim is stated as "Judgment, services." The attachments to Claim 11 state the date of the judgment was 4/9/15, and the original judgment was entered against Kelly in the amount of $10,021.03.

Debtors have not filed objections to allowance of either Proof of Claim No. 10 nor Proof of Claim 11. No adversary proceeding to determine the validity or extent of any liens has been commenced in relation to this bankruptcy case under F.R.B.P. 7001(2).

Debtors filed Chapter 13 Plans; the Court entered an Order confirming Debtors' Plan on August 8, 2016. Debtors later moved to modify their confirmed Plan, and with the Chapter 13 Trustee's consent, the modified Plan was approved by Order entered November 16, 2016. Debtors' confirmed Plan requires them to make monthly plan payments for 60 months. The confirmed Plan[3] provides at paragraph 7c on page 4 that Kelly "is the holder of an interest in a marital settlement agreement disclosed on Schedule B #9. Mrs. Pederson shall turnover to the Trustee any amount paid to her as a result of the agreement during the pendency of her case."

Renfro admits that he is obligated to pay Kelly $25,000 from the sale of the marital home. He testified that he has tried to sell or refinance the marital home, but he ran into roadblocks

---

[2]Counsel for the MDOR was present at the hearing. While not part of this record, MDOR informed the Court that Proof of Claim No. 10 was filed as an unsecured claim by mistake, because MDOR missed the filing of a warrant for distraint, the effect of which appears to render MDOR's tax claim secured in part by Kelly's interest in the marital residence.

[3]The Court takes judicial notice of the adjudicative facts stated in the confirmed Plan and other court documents pursuant to Fed. R. Evid. 201(c)(1).

because of the post-divorce judicial liens against Kelly, which appeared on the title report for the marital residence and based upon which lenders refused to refinance. Renfro asked Kelly to resolve the judicial liens and allow him to deduct the amount necessary to satisfy those liens from his $25,000 obligation to her under Ex. 1. Kelly testified that she has not seen the judicial liens, and that there are judgments against them with different dates. Proposals were exchanged but they were not able to reach a resolution.

Renfro's Ex. 4 is an email from Kelly's attorney dated May 16, 2016. Ex. 4 states that debts upon which the judicial liens were based were allocated to Renfro under the MPSA and he is required to pay them. In Ex. 4 Kelly offers to take possession of the marital home, and she will refinance it and pay off the mortgage, the judicial liens and pay Renfro $25,000.[4] Renfro testified that, because they were unable to reach a resolution regarding the judicial liens on the marital home, he retained counsel and asked the state district court for declaratory relief.

Ex. 2 is Renfro's request for declaratory relief filed in the state district court on September 16, 2016. Among other things, in Ex. 2 Renfro asks the court to require Kelly to sign documents transferring title to the marital residence to Renfro so that he can refinance and pay the judicial liens against Kelly, asks the court to offset that payment from the $25,000 he was obligated to pay Kelly under Ex. 1, and asks for an award of his attorney's fees and costs under the MPSA. Renfro did not request relief from the stay prior to filing Ex. 2 in the state district court, and the stay was not modified prior to his filing.

On September 24, 2016, Kelly filed a motion to dismiss Renfro's request for declaratory

---

[4]Renfro's Ex. 4 was admitted over the objection of Kelly's counsel. Renfro's attorney contended that his Ex. 4 was offered only to provide a time frame in support of their request for retroactive relief from the stay. The Court admitted Renfro's Ex. 4 for that limited purpose.

relief.  In Ex. 3, Kelly argued that Renfro failed to obtain relief from the stay prior to filing his request, that no basis existed in law or fact to unilaterally modify the MPSA, which had been negotiated and bargained for.  Ex. 3 concludes with a request for attorney's fees and costs pursuant to Ex. 1.  On November 1, 2016, the state district court entered an order, Debtor's Ex. 4. The court closed the case pending action to reopen it, and directed Renfro to file a status report upon entry of Debtors' discharge, dismissal or other dispositive action in this bankruptcy case.

Renfro filed his Motion to Modify Stay on November 28, 2016, seeking relief from the stay under § 362(d)(1) for "cause" and in addition under § 362(d)(2), contending that Kelly does not have an equity in the marital residence because she has not claimed an exemption, and that the property is not necessary to her reorganization because of the "turnover provision" in the confirmed Plan.  Renfro argued that Kelly's judicial lien creditors should be paid before unsecured claims, and that the state court could determine the responsibility for the judicial liens and give effect to the MPSA by allowing him to refinance the marital residence.  He notes that there is a domestic relations exception to federal court jurisdiction to allow state courts to handle issues arising in divorce decrees.

On December 13, 2016, Debtors filed an objection to Renfro's Motion.  Debtors argue that Proofs of Claim Nos. 10 and 11 are unsecured claims, that Renfro is not a party in interest and that he willfully violated the stay by requesting declaratory relief in the state court without first obtaining relief from the stay, and that the terms of the bargained for MPSA are clear in requiring Renfro to sell the marital residence and pay her $25,000 with which to pay Kelly's creditors.  Debtors do not want the stay modified and the financial burden of being forced to relitigate the MPSA is state court, with the risk of having to pay Renfro attorneys and costs.

7

On December 27, 2016, Renfro filed a memoranda opposing Debtor's objection.  In Doc. 69, Renfro for the first time argues that retroactive relief from the stay should be granted based upon the equities, including alleged inequitable conduct by Kelly when she initiated informal negotiations with Renfro prior to his request for declaratory relief.  Renfro repeats that the state court is the proper forum to determine responsibility for the judicial liens on the marital residence and whether Renfro should be allowed to refinance the marital residence instead of selling it.  Finally, Renfro argues that sanctions for violation of the stay should not be imposed against him for negotiations which Kelly invited.

Debtors filed a supplemental response to Renfro's Motion, arguing that Renfro failed to make the showing required under Montana law that the MPSA in Ex. 1 is unconscionable before it can be modified, and therefore failed to show "cause" required under § 362(d)(1).

## DISCUSSION

Renfro asks for relief from the stay and, in his memorandum in response to debtor's objection, asks for retroactive relief from the stay.  He argues that the parties differ in the characterization of the debt for which there are approximately $11,000 in judicial liens against the marital residence.  Renfro contends that no evidence exists that Kelly's debts predate the divorce and asks for relief from the stay to let the state family court decide who is responsible for the judicial liens, and to let him refinance the marital residence so that he can continue to live there.

Kelly argues that the MPSA in Ex. 1 was bargained for by the parties and is not unconscionable.  She contends that Renfro's request for annulment of the stay should be denied on procedural grounds because it was not raised in Renfro's original Motion.  As for the judicial

liens, she argues that no evidence exists in the record of any judicial liens against the marital residence, and that if any liens are asserted a challenge to their validity can take place in an adversary proceeding without modifying the automatic stay.

The Debtors' filing of their Chapter 13 bankruptcy petition on February 25, 2016, gave rise to an "automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has stated repeatedly the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Haw. Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993). The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

*See In re Wardrobe*, 559 F.3d 932, 934 (9th Cir. 2009), quoting *Gruntz.*

Debtors object to Renfro's Motion and oppose granting relief from the stay, which would burden them with time and legal expenses of returning to the state district court where Renfro would seek a determination of responsibility for the judicial liens and seek modification of the MPSA so that he can refinance instead of sell the marital residence.

With respect to Renfro's request for retroactive relief from the stay, the Court denies that request on procedural grounds. Rule 9014(a), Fed. R. Bankr. P., provides in pertinent part: "In a

contested matter not otherwise governed by these rules, relief shall be requested by motion . . . ." Renfro's did not request retroactive relief from the stay by motion.  His request is in a "Memorandum Opposing Kelly's Objection" to his original Motion.  The difference is not minor, nor is it immaterial.[5]  Inserting requests for relief in a responsive pleading creates procedural and due process concerns, which do not occur when a party requests relief by motion as required by Rule 9014(a).  This Court denies Renfro's request for retroactive relief on procedural grounds to avoid those concerns.

Renfro was required to pay a filing fee when he filed his Motion.  He did not pay a filing fee when he requested retroactive relief from the stay in his memorandum.  The filing fee is a requirement for seeking relief from the stay.

Renfro contends he needs retroactive relief from the stay because the Debtor requests sanctions.  However, Debtors have not filed a motion under Rule 9014(a) requesting sanctions for violation of the stay.  The question of sanctions against Renfro for willful violation of the stay is not before this Court in a procedurally proper manner.  Thus, Renfro was not required to request retroactive relief from the stay to avoid sanctions, and his request for retroactive relief is irrelevant to the matter which is presently before this Court in a procedurally proper manner.

Renfro's Motion is based in part on § 362(d)(2).  He contends that Kelly does not have an

---

[5]One difference is that, in determining whether cause exists for retroactive annulment of the stay, a court must focus on two factors:  "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor has engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor."  *In re Fjeldsted*, 293 B.R. 12, 24 (9th Cir. BAP 2003), quoting *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Wast Corp.)*, 129 F.3d 1052, 1054-55 (9th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998).  These factors are different from the usual "cause" analysis under § 362(d)(1) discussed below.

equity in the property because she has no exemption in the marital residence and that it is not

necessary for her reorganization because of the turnover provision in the confirmed Plan.  The

latter argument defeats itself.  The confirmed Plan provides at paragraph 7(c) that Kelly shall turn

over to the Trustee any amounts paid to her under Ex. 1.  Paragraph 1 of the Plan provides that

the Trustee shall use such income for the execution of the Plan.  Thus, the evidence shows that

the proceeds from the sale of the marital residence pursuant to Ex. 1 are necessary to Kelly's

effective reorganization through her confirmed Plan.

Further, § 362(d)(2)(A) requires that "the debtor does not have an equity in such

property[.]"  It does not include language requiring that the Debtor claim or be allowed an

exemption in the property.  Since Congress did not require an exemption when it drafted §

362(d)(2)(A), this Court will not.

Finally, Renfro's Motion is based upon § 362(d)(1), which allows for the granting of

relief from the automatic stay "for cause, including the lack of adequate protection of an interest

in property of such party in interest[.]"  This Court explained the standard for modifying the stay

for "cause" under § 362(d)(1) in *In re Westco Energy, Inc. ("Westco")*, 18 Mont. B.R. 199, 211-

12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after
> notice and a hearing, the court shall grant relief from the [automatic] stay" in three
> instances.  The subsection relevant to these proceedings is § 362(d)(1), which
> allows for the granting of relief from the automatic stay "for cause".  What
> constitutes cause for purposes of § 362(d) "has no clear definition and is
> determined on a case-by-case basis."  *Tucson Estates*, 912 F.2d at 1166.  *See also
> Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little
> Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic
> stay may "be granted 'for cause,' a term not defined in the statute so as to afford
> flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the

automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

Relief from stay proceedings are handled in a summary fashion. The Ninth Circuit Bankruptcy Appellate Panel explained:

> Relief from stay proceedings such as the one brought by Wells Fargo are primarily procedural; they determine whether there are sufficient countervailing equities to release an individual creditor from the collective stay. One consequence of this broad inquiry is that a creditor's claim or security is not finally determined in the relief from stay proceeding. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–41 (9th Cir.1985) ( "Hearings on relief from stay are handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing."); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir.1994) ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect...."); *First Fed. Bank v. Robbins (In re Robbins)*, 310 B.R. 626, 631 (9th Cir. BAP2004).

*Veal v. Amer. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. BAP 2011).

A party seeking relief need only establish that it has a colorable claim to enforce a right against property. *In re Edwards*, 454 B.R. 100, 105 (9th Cir. BAP 2011), citing *Veal.* In the instant case Renfro does not seek to enforce an existing right against property. He is not a mortgagee. His Motion seeks relief from the stay to modify the MPSA so that he can refinance the marital residence instead of listing and selling it as the MPSA requires. In addition he seeks relief from stay so that the state court can determine responsibility for judicial liens.

Renfro must establish a prima facie case that cause exists for relief under § 362(d)(1). *United States v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *Duvar Apt., Inc. v. FDIC (In re*

12

*Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996).  Once a prima facie case has been established, the burden shifts to the Debtors to show that relief from the stay is not warranted.  *Id.*

This Court finds and concludes that, at the present time and based on the instant record, Renfro has not established a prima facie case that cause exists for relief under § 362(d)(1).  Debtors object to Renfro's Motion and do not want the stay lifted.  They seek the continued protection of the automatic stay against Renfro's attempts to modify the MPSA, which includes a request for an award of attorneys' fees and costs against Kelly, and Debtors want Renfro to list and sell the marital residence as required under Ex. 1.  Given Debtors' opposition to lifting the stay, the Court finds insufficient cause to burden them with Renfro's declaratory action in state court seeking to modify the bargained-for MPSA.

Proofs of Claim have been filed in this Chapter 13 bankruptcy case, after notice was sent out to Kelly's creditors.  Allowance or disallowance of claims against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B).  Determination of the validity, priority or extent of liens also is a core proceeding under § 157(b)(2)(K).  Core proceedings even include the sale of property in certain circumstances under § 157(b)(2)(N).  In other words this Court has jurisdiction to hear and decide objections to claims, or a proceeding to determine the validity or extent of judicial liens against the marital residence which are attributable to Kelly, or even to sell Kelly's interest in the marital residence pursuant to the MPSA.  While the state court also is empowered to determine the liability for the judicial liens, that alone is not cause to modify the stay over the Debtors' objections.

If Debtors complete payments required under their confirmed Plan they may be entitled to a discharge of all debts provided for by the plan or disallowed, under 11 U.S.C. § 1328.  Entry of

a discharge under Chapter 13 terminates the stay under the provisions of § 362(c)(2)(C).  At some point, the automatic stay will be ended and the parties can return to the state court if they still desire to litigate remaining issues, subject possibly to the results in this case and the effect of the permanent injunction arising from 11 U.S.C. § 524.  Based on the foregoing, this Court exercises its discretion and denies Renfro's Motion to Modify Stay.  *Mataya v. Kissinger*, 72 F.3d at 108-109.  This Court's denial of Renfro's Motion will be without prejudice.[6]

 **IT IS ORDERED** a separate Order shall be entered sustaining Debtors' objection and denying Renfro's Motion to Modify Stay filed on November 28, 2016, without prejudice.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge

---

[6]Renfro has leave to refile a motion to modify stay, including seeking annulment of the stay.

14